UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL BRIDGEFOURTH,

               Petitioner,              **DECISION AND ORDER**
                                                                   No. 05-CV-535(VEB)

    -vs-

SUPERINTENDENT ARTUS,

               Respondent
_____

## I. Introduction

Petitioner Paul Bridgefourth ("Bridgefourth" or "petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in New York State Supreme Court (Erie County) following a jury trial of three counts of robbery in the first degree (N.Y. Penal Law § 160.15(4)). The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

## II. Factual Background and Procedural History

On July 6, 2000, Aileen Rodriguez ("Rodriguez") and Nicholas Martinelli ("Martinelli") were working together at a Wilson Farms store. T.31.[1] Rodriguez testified that she was helping Martinelli cash out a long line of customers. After all of the customers were gone, Bridgefourth approached the register and told Martinelli to hand over all of the money. T.32. Rodriguez recalled that Bridgefourth was holding a small chrome gun underneath a yellow plastic bag from either Rite Aid or Fay's. T.33-34. Rodriguez stated that she was standing about three feet away

---

[1] Citations to "T.___" refer to pages of the trial transcript.

from Bridgefourth, who was not concealing his face. T.48-49. Rodriguez testified that after Martinelli turned over the money in his cash register, Rodriguez handed Bridgefourth over $100 from her register. T.34. Bridgefourth put the money in the yellow bag and left the store. T.35. Rodriguez testified that she subsequently identified petitioner from a photo array. T.44-46, 49-52.

Martinelli, the other store clerk, testified that on July 6, 2000, he was working with Rodriguez and manager Kevin Brown ("Brown"). T.56-57. According to Martinelli, Bridgefourth pointed a small pistol at him and told him to turn over all the money in his register. T.57, 60. Martinelli stated that he was two feet away from Bridgefourth, whose face was not covered. T.58-59. Martinelli recalled that Bridgefourth put the money in a Fay's bag and left the store. T.60.

Brown then called the police. When they arrived, Martinelli viewed a security videotape and was able to identify petitioner. T.62. Martinelli also identified petitioner from a photographic array, T.77-78, and during a lineup procedure, T.63-65.

The prosecution presented testimony from Amanda Fursback ("Fursback") regarding the second robbery which occurred on July 11, 2000, at a Red Apple Kwik Fill store. That day, Fursback was working alone when Bridgefourth entered the store with a gun in his hand and told her to put all of the money in a plastic bag. T.116-17. After Fursback complied with petitioner's demand, he left the store. T.117.

Prior to trial, Fursback identified petitioner from a lineup. T.120-121. During trial, Fursback made an in-court identification of petitioner, T.118-19, and also identified him after

-2-

watching a security videotape taken at the store at the time of the robbery, T.131-38. Fursback was shown some pictures by the police from which she was not able to make an identification, but there is no indication whether petitioner's whether petitioner's picture was included. T. 151-53.

The jury returned a verdict convicting Bridgefourth as charged . He was sentenced to a determinate term of imprisonment of twenty-five years.

On direct appeal, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction, holding that the police had reasonable suspicion to stop and detain defendant; that handcuffing of defendant for security reasons during the car trip did not constitute an arrest; that the trial court did not abuse its discretion in denying defendant's request to sever the multiple robbery charges brought against him; and that he was not denied the effective assistance of counsel at trial. *People v. Bridgefourth*, 13 A.D.3d 1165, 787 N.Y.S.2d 535 (App. Div. 4th Dept. 2005). The New York Court of Appeals denied leave to appeal. *People v. Bridgefourth*, 5 N.Y.3d 760, 834 N.E.2d 1264, 801 N.Y.S.2d 254 (N.Y. 2005).

This federal habeas petition followed. *See* Docket No. 1. As Ground One of the petition, Bridgefourth states "unlawful imprisonment." In support of this claim, Bridgefourth asserts that the "police acted without checking out the tale of the story [of the anonymous tipster], held me until another authority came to arrest me." Petition at 5 (Docket No. 1).  As Ground Two of the petition, which is "unlawful arrest," Bridgefourth states that "[n]o one was certain [he] committed any crime, nor did the crime happen in their jurisdiction. Nothing to test the hearsay information[.]" Petition at 5 (Docket No. 1). Under Ground Three, Bridgefourth has stated "Perjury Buffalo Police Department John Abrams." In support of this claim, Bridgefourth writes

that "the Buffalo Police Department . . . falsely claiming [sic] I volunteer, when everything they did at the inception of the arrest was an arrest." Petition at 6 (Docket No. 1). Ground Four of the petition is "Falsefying [sic] Information to the Grand Jury." Bridgefourth alleges, "The [sic] never told the Grand Jury that another person was picked up and charged with the same crime." Petition at 6 (Docket No. 1). Bridgefourth did not file a memorandum of law in support of the petition and has not filed a reply memorandum of law.

Respondent answered the petition, asserting that Grounds One and Two, which allege Fourth Amendment violations, are not cognizable on federal habeas review. Respondent has asserted the defenses of non-exhaustion and procedural default with respect to Ground Three and Ground Four, neither of which were raised on direct appeal. Respondent argues that, in any event, all of Bridgefourth's claims should be dismissed because they are without merit.

For the reasons that follow, Bridgefourth's request for a writ of habeas corpus is denied and the petition is dismissed.

**III.   Discussion**

    **A.   The doctrine of *Stone v. Powell* precludes habeas review of petitioner's claims in Grounds One and Two that his Fourth Amendment rights were violated during his arrest.**

Petitioner alleges in Grounds One and Two of his petition that he was arrested without probable cause and that his detention by the City of Buffalo police prior to his arrest was illegal because the crime for which he ultimately was arrested occurred in the Town of Tonawanda, outside of their geographical jurisdiction. Respondent correctly argues that these Fourth Amendment claims are not cognizable on habeas review under the doctrine of *Stone v Powell*, 428 U.S. 465 (1976).

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481-82. (emphasis added). In *Gates v. Henderson*, 568 F.2d 830 (2d Cir.1977) (*en banc*), *cert. denied*, 434 U.S. 1038 (1978)), the Second Circuit developed a "litmus test" for determining when a petitioner has denied an "opportunity" for a "full and fair litigation of his fourth amendment claims." *Gates*, 568 F.3d at 839, 840; *accord Capellan v. Riley*, 975 F.2d 67, 69-71 (2d Cir.1992); *see also McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67, 70 (2d Cir.1983). The Second Circuit has held that review of Fourth Amendment claims presented by habeas petitioners would be undertaken only if (1) "the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations." *Capellan*, 975 F.2d at 69-71 (quoting *Gates*, 568 F.2d at 840 and citing *McPhail*, 707 F.2d at 70), or (2) "the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an 'unconscionable breakdown in the underlying process.'" *Id.* (quoting *Gates*, 568 F.2d at 840).

New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 7 10. 10 *et seq.*, has been held by the federal courts in this Circuit to be "'facially adequate.'" *Capellan*, 975 F.2d at 70 n. 1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing *Gates*, 568 F.2d at 837 & n. 4; *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)). Bridgefourth took advantage of the opportunity to challenge the legality of his arrest, asserting the probable cause claim at the pre-trial suppression hearing, where the court

made findings of fact and conclusions of law which were affirmed by the appellate court on direct appeal. However, Bridgefourth did not raise the claim that his initial stop and detention was made by the police officers outside of their geographical jurisdiction[2] at the suppression hearing but instead attempted to assert it for the first time on direct appeal. The Appellate Division consequently held that it was unpreserved for review and declined to address it. *People v. Bridgefourth,* 13 A.D.3d at 1166, 787 N.Y.S.2d at 536 (citing *People v. Hall,* Cite as: 294 A.D.2d 112, 113, 743 N.Y.S.2d 69, 70) (holding that defendant's challenge "to the sufficiency of the evidence establishing that New York County had geographical jurisdiction over the forgery charge" was unpreserved due to failure to register specific objection) (citing *People v. Gray*, 86 N.Y.2d 10, 629 N.Y.S.2d 173, 652 N.E.2d 919).  Bridgefourth did not obtain a review on the merits regarding the geographic jurisdiction claim. Notably, however, all that must be shown is that the state has provided an *opportunity* to litigate the Fourth Amendment claim; it does not matter, for purposes of determining if there has been a full and fair opportunity for litigation. *See*

---

[2] This claim is apparently based on New York state's Section 140.50(1) which permits a police officer to "stop a person in a public place located within the geographical area of such officer's employment when he reasonably suspects that such person is committing, has committed or is about to commit either (a) felony or (b) a misdemeanor defined in the Penal Law, and may demand of him his name, address and an explanation of his conduct." N.Y. CRIM. PROC. LAW § 140.50(1) (quoted in *People v. Edmonds*, 157 Misc.2d 966, 969, 599 N.Y.S.2d 441, 442 (N.Y. Sup. Ct. 1993)); *see also People v. Stephens*, 139 A.D.2d 412, 414, 526 N.Y.S.2d 467, 469 (App. Div. 1st Dept. 1998)). Section 140.50(1) sets forth the procedure for a "stop and frisk" or a "*Terry* stop and frisk", incorporating the name of the Supreme Court opinion that first signified acceptance of it as within permissible constitutional boundaries of the Fourth Amendment., *Terry v. Ohio*, 392 U.S.1 (1968). Section 140.50(1) provides more expansive protection than that provided by federal law, however, as can be seen by the holding in *Brewster v. City of New York*, 111 A.D.2d 892, 490 N.Y.S.2d 601 (App. Div. 2d Dept. 1985). There, the Appellate Division held (in a civil setting) that the power to stop and question a person on reasonable suspicion of criminal activity is specifically limited by Section 140.50(1) to the geographical area of officer's employment, and any purported extension of that power by local law is illegally inconsistent with the limitation imposed by the state legislature. Curiously, Sections 140.10 (2) and (3) "allow those very same police officers to make arrests in various circumstances far outside their employment borders." *People v. Edmonds*, 157 Misc.2d at 969). In addition to being not cognizable because it is based upon an alleged Fourth Amendment violation, Bridgefourth's claim under Section 140.50(1) also is not cognizable because it alleges merely an error of New York state law. Federal habeas review is only available for violations of federal constitutional law. *See* 28 U.S.C. § 2254(a).

*Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (*whether or not he or she took advantage of the state's procedure*), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]") (emphasis supplied).

Bridgefourth cannot meet the conditions of the second exception allowing habeas review of Fourth Amendment claims because he has not alleged that an "unconscionable breakdown" in the state court's corrective procedures occurred, and none is apparent on the record before this Court. *See Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988) (*per curiam*)). As the district court observed in *Cappiello v. Hoke*, "an unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello*, 698 F. Supp. at 1050 (cited by *Capellan*, 975 F.2d at 70) *see also Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y.1987).  A habeas petitioner's mere disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72. Bridgefourth is simply asserting that the state courts erroneously decided his motion to suppress, and he is requesting that this Court conduct a *de novo* factual review of his claims. The relief requested, however, is expressly forbidden by the *Stone v. Powell* doctrine, as the Second Circuit has explained many times.  *E.g.*, *Capellan*, 975 F.2d at 71; *Gates v. Henderson*, 568 F.2d at 840

("*Stone v. Powell* . . . holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts.").

Bridgefourth was provided with the opportunity for a full and fair litigation of his Fourth Amendment claims in the state courts, as mandated by *Stone v. Powell*. Bridgefourth's mere disagreement with the state courts' rulings on those claims does not, in and of itself, affect the legitimacy of the available corrective process so as to amount to an "unconscionable breakdown" in those procedures. Accordingly, Bridgefourth's claims in Grounds One and Two of the petition are barred from habeas review under *Stone v. Powell*. *E.g.*, *Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir.1986) (Even where state conceded that petitioner's arrest lacked probable cause, petitioner's claim that his post-arrest questioning was fruit of the illegal arrest was barred because New York "clearly provided" petitioner with "an opportunity fully and fairly to litigate" the Fourth Amendment claim, and his failure to allege a fourth amendment claim at trial or on direct appeal bars him from doing so on habeas review.); *Chavis v. Henderson*, 638 F.2d 534, 538 (2d Cir.1980) (Petitioner's claim "that his arrest was without probable cause and that therefore the identification evidence should have been excluded, was properly rejected by the district court. [Petitioner] made no showing . . . that he had been precluded from a full and fair opportunity to litigate this issue in the state courts. Under *Stone v. Powell* . . ., he may not urge the same grounds for federal habeas corpus relief.")

    **B.**    **Petitioner's claim in Ground Three that a prosecution witness presented perjured testimony is "deemed exhausted" but procedurally defaulted.**

In support of Ground Three of the petition, Bridgefourth contends that Buffalo City Police Officer John Abram testified falsely at trial that Bridgefourth voluntarily accompanied him to the police station. As respondent asserts, petitioner's perjury claim is unexhausted

because he failed to raise it on direct appeal and has no avenues open to him in the state courts by which to raise this claim.

"For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Id.*; *see also* 28 U.S.C. § 2254(c).

Here, New York's procedural rules clearly bar Bridgefourth from attempting to raise his perjury claim in the state courts. First, he has already used the one direct appeal to which he is entitled. *See* N.Y. Court Rules § 500.10(a); *accord Grey*, 933 F.2d at 120. Second, collateral review of this record-based claim is barred because Bridgefourth could have raised it on direct appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (stating that the court "must" deny a motion to vacate where, "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him"). As Bridgefourth accordingly no longer has "remedies available" in the New York state courts under 28 U.S.C. § 2254(b), he has met the statutory exhaustion requirements for presenting a habeas claim to the federal courts. *See Grey*, 933 F.2d at 121. Stated another way, Bridgefourth's perjury claim should be "deemed exhausted" because the claim is now procedurally barred from presentation to the courts of New York state. *See id.* at 120-21.

However, the procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes Bridgefourth from the litigating the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom. *See Grey*, 933 F.2d at 121 (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87-91 (1977)). Petitioner has neither addressed respondent's arguments regarding exhaustion and procedural default, nor has he attempted to make any showing of cause or of prejudice. Bridgefourth therefore cannot overcome the procedural default of the perjury claim. Habeas review of it therefore is unavailable and the claim is dismissed.

> **C.    Petitioner's claim in Ground Four regarding the grand jury proceeding is "deemed exhausted" but procedurally defaulted, and it also is not cognizable on federal habeas review.**

Under Ground Four of his petition, Bridgefourth alleges that the prosecutor never informed the grand jury that another person allegedly had been arrested and charged with the crimes for which he was convicted. As respondent notes, this claim has never been raised in the state courts. Bridgefourth does not dispute respondent's arguments regarding his failure to exhaust this claim and procedural default. This claim must be deemed exhausted, though, because the state courts would find it to be procedurally barred: Bridgefourth has already utilized his one direct appeal, and a collateral motion to vacate would be dismissed because the claim could have been raised on direct appeal *See* N.Y. Court Rules § 500.10(a); N.Y. Crim. Proc. Law § 440.10(2)©; *Grey v. Hoke*, 933 F.2d at 120-21. Unless Bridgefourth can demonstrate cause and prejudice to excuse the procedural default, habeas review is precluded. *Grey*, 933 F.2d at 121 (citation omitted). Bridgefourth has not attempted to demonstrate cause or prejudice, and none is apparent on the record before me. Accordingly, I am precluded from reviewing the merits of this

claim.

In addition, the grand jury claim must be dismissed because it is not cognizable in this federal habeas proceeding. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (holding that any errors resulting from habeas petitioner's "claims of impropriety before the grand jury in this case concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" . . . were "cured in the trial before the petit jury, which convicted") (citing *United States v. Mechanik*, 475 U.S. 66, 68 (1986) (on direct appeal, holding that the trial jury's guilty verdict necessarily rendered any irregularities before the federal grand jury harmless as it established not only that there existed probable cause to indict the defendant, but also that the defendant was "in fact guilty as charged beyond a reasonable doubt"). Based on *Mechanik*, which held that "federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury," *Lopez*, 965 F.2d at 32, "similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court," *id.* Accordingly, Bridgefourth's claim regarding alleged errors at the grand jury proceeding must be dismissed as not cognizable in this federal habeas proceeding.

**IV.    Conclusion**

For the reasons stated above, Paul Bridgefourth's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:   December 10, 2007
         Buffalo, New York.